UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ESTELL L. THOMAS,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>LOUIS DEJOY,<br>　　　　　　　　　　Defendant. | Case No. 2:23-cv-00397-MMD-EJY<br><br>ORDER |

**I.　SUMMARY**

Plaintiff Estell L. Thomas, proceeding *pro se*, asserts discrimination and reprisal claims against Defendant Louis DeJoy, the Postmaster General of the United States Postal Service ("USPS"). Before the Court are Defendant's motion to dismiss (ECF No. 26 ("MTD")) and Plaintiff's countermotion for judgment on the pleadings (ECF No. 39 ("Motion for Judgment").)[1] As further explained below, the Court will grant in part and deny in part the MTD and deny the Motion for Judgment.

**II.　BACKGROUND**

The following facts are largely adapted from the complaint. (ECF No. 1 ("Complaint").)

Thomas worked for USPS as a Full-Time Mail Processing Clerk in Las Vegas, Nevada, until her retirement in December 2019. (*Id.* at 2.) Her duties were to separate mail in the postal facility by unloading mail from the dock; pitching letters, flats, and parcels; working in the box section; and assisting customers. (*Id.*) From 2013 to 2017, Thomas was assigned to pitch parcels full-time, a task which the Bargaining Unit Qualification Standards for her position describe as "arduous exertion" involving

---

[1] The Court has reviewed the responses and replies to these motions. (ECF Nos. 30, 31 (errata), 37, 42, 44 (errata).)

1  "standing, walking, bending, and reaching" and "handling heavy containers of mail and parcels weighing up to 70 pounds." (*Id.* at 3.) She no longer performed the other aforementioned duties of a mail processing clerk. (*Id.*) Meanwhile, other processing clerks were tasked with duties that allowed them to sit or use a rest bar. (*Id.*)

Between 2012 and 2017, Thomas was diagnosed with diabetic neuropathy of her feet, plantar fasciitis, calcaneal spurs, osteoarthritis, and localized edema. (*Id.* at 2.) These conditions are chronic and permanent. (*Id.*)

Thomas filed a formal EEO complaint in Agency Case Number 4E-890-0044-13 ("*EEO Case I*") in July 2014 about the disparities in her job duties. (*Id.*) The EEOC ruled against Thomas after finding that she was not similarly situated to her co-workers with different resting accommodations because they worked part-time, whereas Thomas was a full-time processing clerk. (*Id.*)

In the fall of 2017, Thomas received a note from her physician stating that, because of her medical condition, she needed to be off of her feet and perform her duties while sitting down for two hours each day. (*Id.*) Thomas then requested accommodations and met with her supervisor, the acting manager, and the District Reasonable Accommodation Committee ("Committee") chairman ("Chairman") to discuss options for letting Thomas rest during the workday. (*Id.* at 4.) The parties to the meeting discussed allowing Thomas to use a rest bar. (*Id.*) Thomas then provided management with a letter from her physician recommending that she be allowed to use a rest bar or sit down "for at least two consecutive hours" during her normal workday to relieve the pain and pressure in her feet. (*Id.*)

After receiving the letter, Thomas' manager changed her duties to allow her to sit down or use a rest bar periodically throughout the day. (*Id.* at 5.) The manager also allowed her to spread out her break times. (*Id.*) But about a month later, a change in management caused Thomas to no longer reliably receive the breaks she needed. (*Id.*) The Committee then recommended that management allow Thomas to use a rest bar while performing her duties and to sit down for at least two hours during her shift. (*Id.*)

2

Thomas sought to amend her request for accommodation to also include spreading out her break and lunch times. (*Id.*) The Chairman then scheduled another meeting and requested additional medical documentation. (*Id.*) Thomas' physician provided a second letter advising that Thomas' requested break schedule be followed as consistently as possible to relieve pressure and pain from her feet. (*Id.*) In May 2018, the Chairman denied Thomas' request to shift her break and lunch schedule because doing so was "operationally difficult" and not required for her to perform her duties. (*Id.* at 6.) They also noted that Thomas' request for a break during the last hour of her shift violated an agreement between USPS and the American Postal Workers Union ("Union Agreement"). (*Id.*) Thomas then requested reconsideration of this decision and offered to change her schedule so as to not violate the Union Agreement. (*Id.*) The Chairman did not respond. (*Id.*)

Thomas' supervisor then deliberately and consistently assigned her duties that violated the accommodations approved by the Committee well into 2019. (*Id.*) Thomas submitted a report challenging these practices in May 2019. (*Id.*) She retired in December 2019. (*Id.*)

On April 9, 2018, Thomas filed another EEO complaint in Agency Case Number 4E-890-0019-18 ("*EEO Case II*") alleging discrimination on the basis of her race and disability and reprisal for a prior protected EEO activity. (*Id.* at 2; ECF No. 20-4.[2]) Thomas' claims in *EEO Case II* arose from USPS management's delay in responding to her reasonable accommodation request, inconsistent implementation of her requested accommodation after it was granted, and denial of her request to change her break and lunch times. (ECF No. 1 at 2.) Both the claims of discrimination and reprisal were dismissed ("Decision I"), and Thomas appealed. (ECF No. 20-4 at 2.) In Appeal Number

---

[2]The Court takes judicial notice of the EEOC's decision on Thomas' request for reconsideration as a matter of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). For the purposes of resolving the MTD, the Court takes notice of this decision only to the extent that the decision exists, "not for the truth of the facts recited therein." *Id.* at 690 (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)).

3

2019002573 ("Decision II"), the EEOC vacated and remanded the previous decision pending a supplemental investigation. (*Id.*) The EEOC then found that the supplemental investigation did not establish discrimination. (*Id.*) Thomas appealed again. (*Id.*) Then in Appeal Number 2021001289 ("Decision III"), the EEOC affirmed its findings as to the claims of discrimination via denied or delayed requests for reasonable accommodation but reversed its decision on the investigative interview, finding that it had been conducted in reprisal for her 2018 EEO complaint. (*Id.*) Thomas then requested reconsideration of the determinations as to whether USPS delayed and denied her accommodation requests. (*Id.*) In ruling on the request for reconsideration ("Decision IV") on December 12, 2022, the EEOC held that Thomas had no further rights of administrative appeal "on the decision of the Commission on this request" and issued a notice of right to sue ("Notice"). (ECF No. 20-4 at 2-3.) On April 26, 2023, Thomas submitted an appeal to the EEOC in *EEO Case II* regarding the compensatory damages she had received for her successful reprisal claim. (ECF Nos. 26-1.[3])

Thomas filed her Complaint in the instant case on March 13, 2023, alleging reprisal for EEO protected activity and racial and disability discrimination. (ECF No. 1.)

### III.   MOTION TO DISMISS

To survive a motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. PROC. 12(b)(6),[4] a complaint must provide "a short and plain

---

[3]The Court takes judicial notice of this filing as a proceeding before another adjudicative body that has "a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *accord Lee*, 250 F.3d at 989.

[4]Defendant brings his MTD under both Rule 12(b)(6) and Rule 12(b)(1). (ECF No. 26.) However, administrative exhaustion under Title VII is not jurisdictional; rather, the Title VII exhaustion requirements are claim processing rules that speak to the parties' procedural obligations to which Courts should apply the Rule 12(b)(6) standard. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846, 1850-51 (2019); *Vasquez v. Kiewit Infrastructure W., Co.*, No. CV 19-00513 HG-WRP, 2020 WL 2842671, at *4 (D. Haw. June 1, 2020); *Mendoza v. DeJoy*, No. 21-CV-00991-H-JLB, 2021 WL 4895948, at *1 n.2 (S.D. Cal. Oct. 19, 2021). The exhaustion requirement is still "mandatory in the sense that a court must enforce the rule if a party properly raises it." *Davis*, 139 S. Ct. at 1849. The Court will address the issue of exhaustion under Rule 12(b)(6).

statement of the claim" showing that the plaintiff is entitled to relief, FED. R. CIV. PROC. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must first assume that all well-pled allegations in the Complaint are true for the purposes of the MTD. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1158 n.1 (9th Cir. 2019). Mere recitals of the elements of a cause of action are not entitled to this presumption of truth. *See Iqbal*, 556 U.S. at 678. Then, the Court must assess whether the Complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (internal citation omitted). A claim for relief is plausible when it contains either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis omitted). Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss, meaning any facts contained in other documents—aside from "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice"—cannot be considered without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *accord Lee*, 250 F.3d at 688-89.

Defendant moves to dismiss Thomas' claims for failure to state a claim under Rule 12(b)(6). (ECF No. 26.) The Court will first resolve the issue of whether Thomas has met the Title VII exhaustion requirement, then turn to whether Thomas has sufficiently pled her substantive claims.

**A.     Exhaustion**

Defendant first alleges that the Court cannot review Thomas' reprisal claim because she has not exhausted her administrative remedies. (ECF No. 26 at 8.) Exhaustion of administrative remedies is a prerequisite to adjudication of claims for discrimination under Title VII and involves two components: (1) filing a timely charge and (2) acting upon a notice of right to sue. *See Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002); *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th

Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)). There is no dispute that the EEOC charge at issue here was timely. *See Scott*, 888 F.3d at 1106.

The dispute instead revolves around whether Thomas' pending administrative appeal renders her claims unreviewable. The EEOC issued the Notice after it ruled on her request for reconsideration of her discrimination claims. (ECF No. 20-4 at 2-3.) Because the Notice stated that Thomas had "no further right of administrative appeal on the decision of the Commission *on this request*," it was limited to those claims for which Thomas had requested reconsideration. (*Id.* (emphasis added).) The reprisal claim remained active, as Thomas continued to dispute the award of damages. (ECF No. 26-1.) Thus, although Thomas exhausted her discrimination claims before filing the Complaint, her reprisal claim is not yet ready for this Court's review. The reprisal claim is dismissed without prejudice so that Thomas may file an action to pursue that claim once her administrative remedies have been fully exhausted.

### B.  Allegations of Racial Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from racially discriminating against any individual with respect to their "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Thomas' Complaint appears to only allege disparate treatment, as her allegations center around being "treated less favorably than others similarly situated on account of race." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotations omitted).

Defendant argues that Thomas' Title VII claims do not meet federal pleading standards because she has not alleged a prima facie case of racial discrimination. While pleading a plausible prima facie case would sufficiently state a claim, Thomas does not need to plead facts establishing a prima facie case of discrimination to survive dismissal. *See Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-12 (2002). Rather, Thomas

can state a cognizable claim for discriminatory treatment under Title VII by alleging the existence of "circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). But regardless of whether Thomas has pled a prima facie case, the Court will still look to the elements of the prima facie case "to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300-01 (N.D. Cal. 2020) (quoting *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015)).

To establish a prima facie case under Title VII, Thomas must show that: (1) she belongs to a class of persons protected by Title VII; (2) she performed her job satisfactorily; (3) she suffered an "adverse employment action"; and (4) her employer treated her differently than a "similarly situated" employee who does not belong to the same protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). As an alternative to comparator evidence of a similarly situated employee, Thomas can instead provide evidence of "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Defendant does not dispute that Thomas belongs to a protected class[5] or performed her job satisfactorily; rather, he challenges only whether Thomas sufficiently pled the third and fourth elements: adverse employment actions and evidence of racial discrimination.

### 1. Adverse Employment Actions

Under the substantive provisions of Title VII, an adverse employment action is

---

[5]The Court will construe the Complaint liberally to infer that Thomas is African American, but she may wish to plead this element more clearly by including a direct statement as to which protected class she belongs. (ECF No. 1 at 2 ("Plaintiff filed an EEO complaint alleging that the Defendant discriminated against her on the bases of race (African-American).") *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

any action that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up); *accord* 42 U.S.C. § 2000e-2(a)(1). Though the Ninth Circuit defines adverse employment actions broadly, only non-trivial employment actions are cognizable. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Thomas has sufficiently alleged that at least three adverse employment actions were taken against her.

### a.   Assigned Responsibilities

Thomas first alleges that her managers made her pitch parcels full-time and perform tasks that did not allow her to sit or use a rest bar. Being assigned "more, or more burdensome, work responsibilities" constitutes an adverse employment action. *Team Elec. Co.*, 520 F.3d at 1089 (cleaned up). Pitching parcels was the "most arduous" task that a processing clerk could be assigned, and the Court reasonably infers that employees could not sit or use a rest bar while performing this task. (ECF No. 1 at 3.) Thomas was assigned to pitch parcels all day, while other clerks were given less demanding schedules that allowed them to sit or use a rest bar. (*Id.*) Thomas therefore plausibly suggests that she was assigned "unusually burdensome" work responsibilities which materially affected the conditions of her employment, such that these assignments were cognizable adverse employment actions. *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 864 n.2 (9th Cir. 1996), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996).

### b.   Denial of Accommodations

Thomas further alleges that USPS violated her approved accommodations. (ECF No. 1 at 6.) Adverse employment actions can extend beyond affirmative actions taken against employees to also include "situations in which the employer denies an employee a material employment benefit or opportunity that was otherwise available to her." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Cir. 2018); *see also Perez v. Vilsack*, No. CV 15-7820-DMG (KSX), 2016 WL 11755061, at *3 (C.D. Cal.

Sept. 26, 2016) (denying a previously agreed-upon accommodation constituted an adverse employment action); *Phan v. CSK Auto, Inc.*, No. 11-CV-02327 YGR, 2012 WL 3727305, at *8 (N.D. Cal. Aug. 27, 2012) ("Being refused mandatory breaks constitutes an adverse employment action."). Once USPS agreed to let Thomas sit down for two hours a day, scheduling her to perform tasks that did not comply with this accommodation could constitute cognizable adverse employment actions. (ECF No. 1 at 6.)

### c.  Constructive Discharge

An employee's "reasonable decision to resign because of unendurable working conditions" constitutes a constructive discharge. *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). "Title VII encompasses employer liability for a constructive discharge," *id.* at 143, and, if established, "constructive discharge is an adverse employment action," *Jordan v. Clark*, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988); *accord Diemert v. City of Seattle*, __ F. Supp. 3d. __, No. 2:22-CV-1640, 2023 WL 5530009, at *5 (W.D. Wash. Aug. 28, 2023). Thomas alleges that she was repeatedly assigned unusually burdensome tasks and denied reasonable accommodations for her disabilities. Whether this made Thomas' work environment so hostile that it forced her to retire is beyond the scope of the Court's inquiry on Defendant's Rule 12(b)(6) motion; however, these allegations state a plausible constructive discharge claim. *See Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (constructive discharge is "normally a factual question").

### 2.  Evidence of Racial Discrimination

The Complaint alleges that "the acts of the Defendant . . . constitute race discrimination" but says nothing more with regard to the alleged adverse employment actions' connection to Thomas' race. (ECF No. 1 at 7.) Indeed, the Complaint is "devoid of factual allegations of direct evidence of race discrimination, such as an allegation that a supervisor made a derogatory comment about [Thomas'] race" or other evidence of intent to discriminate. *McCarthy v. Brennan*, No. 15-CV-03308-JSC, 2016 WL 946099, at *6-7 (N.D. Cal. Mar. 14, 2016).

Nor does the Complaint allege facts constituting circumstantial evidence sufficient to raise a plausible inference of race discrimination. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008); *Hawn*, 615 F.3d at 1156. Thomas has not alleged a pattern of discrimination against African American employees. *See Knox v. Donahoe*, No. C-11-2596 EMC, 2012 WL 949030, at *7 (N.D. Cal. Mar. 20, 2012), *aff'd*, 540 F. App'x 811 (9th Cir. 2013). She also has not pled that USPS did not engage in the alleged adverse actions against similarly situated employees outside of her protected class (i.e., other, non-African American mail processing clerks). *See McCarthy*, 2016 WL 946099, at *6; *see also Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct"). While Thomas did state that part-time mail processing clerks were assigned less arduous duties than she was, the Complaint does not state that those clerks were not African American, nor allege facts for the Court to plausibly infer that part-time mail processing clerks are similarly situated to full-time mail processing clerks. (ECF No. 1 at 3.) And the Complaint makes no reference at all to comparator employees for the other alleged adverse actions. *See Knox*, 2012 WL 949030, at *7 (holding the plaintiff did not allege "any facts to make the claim of discrimination plausible," including "any claim that similarly situated persons outside of his protected class were treated more favorably"). "The conclusory claim for discrimination is not plausible and therefore not viable." *Id.* (citing *Iqbal*, 556 U.S. at 663).

Because Thomas has failed to allege facts sufficient to plausibly state a race discrimination claim, the Court grants the MTD as Thomas' first cause of action. *See Twombly*, 550 U.S. at 562. Thomas' racial discrimination claim is dismissed with leave to amend.

### C. Allegations of Disability Discrimination

The Rehabilitation Act ("RA") protects USPS employees from disability discrimination. *See* 29 U.S.C. § 794(a). To state a prima facie case under the RA,

Thomas must demonstrate that she is a person with a disability who was otherwise qualified for employment and that she suffered discrimination solely because of her disability. *See id.* Like under Title VII, plaintiffs are not required to plead a prima facie case of discrimination to survive a motion to dismiss, "but courts still look to the elements of the prima facie case to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Gunzenhauser v. Garland*, No. 22-CV-03406-WHO, 2023 WL 2167387, at *5 (N.D. Cal. Feb. 21, 2023). Defendants challenge only whether Thomas has a qualifying disability and whether she suffered discrimination solely because of that disability (ECF No. 26 at 14.)

### 1.  Person With a Disability

Disabilities may include physical or mental impairments that "substantially limit[] one or more major life activities," like standing, lifting, bending, performing manual tasks, walking, and working; a record of such impairments; or being regarded as having such an impairment. 42 U.S.C. § 12102(1)-(2);[6] *see also* 29 U.S.C. § 705(9) (defining 'disability' under the RA in reference to Section 12102 of Title 42). This definition must be construed "in favor of broad coverage." 42 U.S.C. § 12102(4)(A); *accord* 28 C.F.R. § 36.105(a)(2)(i).

Thomas alleges that she suffers from "diabetic neuropathy of feet, plantar fasciitis, calcaneal spurs, osteoarthritis, and localized edema," and that these conditions are "chronic and permanent." (ECF No. 1 at 2.) Thomas "needed to be off her feet periodically throughout the day to relieve pressure due to her medical condition." (*Id.* at 3.) Taken together, these allegations indicate that her medical conditions affect at least

---

[6]The standards for determining whether USPS has violated the RA are the same as the standards for determining whether there has been a violation of Title I and Sections 501 through 504 and 510 of the Americans with Disabilities Act. *See* 29 U.S.C. § 794(d).

two major life activities under the RA: standing and working.[7] *See* 42 U.S.C. § 12102; *Erickson*, 551 U.S. at 94 (instructing courts to construe *pro se* filings liberally). Whether Thomas is 'substantially limited' in those activities will ultimately have to be decided by the trier of fact, but at this stage in the proceedings, she has adequately met her burden of pleading that she is disabled within the meaning of the RA. *See* 28 C.F.R. § 36.105(d)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage . . . [and] is not meant to be a demanding standard.").

### 2. Discrimination Because of a Disability

Thomas must also plausibly allege that she was discriminated against because of her disability. *See* 39 C.F.R. § 255.5 ("No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment with the Postal Service."); *Liu v. DeJoy*, 664 F. Supp. 3d 1030, 1048 (C.D. Cal. 2023) (demanding plaintiffs alleging disability discrimination establish 'but for' causation). Both disparate treatment and failure to accommodate a disability can constitute discrimination under the RA. *See McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1068 (N.D. Cal. 2017).

#### a. Failure to Accommodate

Failing to provide a reasonable accommodation can constitute disability discrimination under Section 504 of the RA. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). While "there exists no stand-alone claim for failing to engage in the interactive process," an employer is liable for discrimination if they fail to engage in the interactive process in good faith where there is "an available and reasonable accommodation." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)).

Thomas has alleged that the Committee denied her request to spread out her break and lunch times and the Chairman did not respond to her request for

---

[7] Because Thomas has adequately pled that she has a disability, the Court finds it unnecessary to reach whether Thomas might also be disabled under the RA because she either has "a record of such an impairment" or is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(B)-(C).

reconsideration of this denial. (ECF No. 1 at 6.) Defendant argues that Thomas' request to adjust her break and lunch schedule was not a reasonable accommodation because taking a break during the last hour of her shift would have violated the Union Agreement. (ECF No. 26 at 13.) To the extent that Thomas challenges the denial of an accommodation that would explicitly and directly violate the Union Agreement, those claims may not proceed. *See Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 682 (9th Cir. 2001); *Buckingham v. United States*, 998 F.2d 735, 741 (9th Cir. 1993); *Johns v. Brennan*, 761 F. App'x 742, 747 (9th Cir. 2019) (citing *Willis*, 244 F.3d at 682, in unreported opinion regarding RA disability discrimination claim against USPS). However, the Complaint states that Thomas sought to adjust her request to spread out her breaks such that it would comply with the Union Agreement. (ECF No. 1 at 6.) It is this request to reconsider her amended scheduling accommodation to which the Chairman did not reply. (*Id.*) Whether this second request was a reasonable accommodation is a case-specific factual question not yet ready for determination by the Court. *See Vinson*, 288 F.3d at 1154. But at this stage in the proceedings, Thomas has sufficiently pled that USPS did not engage in good faith with her Union Agreement-compliant request to adjust her schedule to state a claim for disability discrimination based on failure to provide reasonable accommodation.

### b.      Disparate Treatment

To allege disparate treatment, Thomas may plead that similarly situated employees were treated more favorably or that "other circumstances surrounding [an] adverse employment action give rise to an inference of discrimination," like evidence of the perpetrator's bias against the disabled or deviations from department practice or policy. *McCoy v. Dep't of Army*, 789 F. Supp. 2d 1221, 1229 (E.D. Cal. 2011) (quoting *Peterson*, 358 F.3d at 603); *see also Gunzenhauser*, 2023 WL 2167387, at *5. Thomas argues that she was subject to multiple adverse actions,[8] but the Complaint as currently

---

[8] Some of these alleged instances of disability discrimination are also missing

drafted does not sufficiently connect those adverse actions to her disability. Thomas did state that part-time mail processing clerks were assigned less arduous duties than she was; however, the Complaint is devoid of references to whether the other clerks were non-disabled individuals. (ECF No. 1 at 3.) *See Burns-Vidlak by Burns v. Chandler*, 939 F. Supp. 765, 771 (D. Haw. 1996) (finding that disparate treatment of the plaintiffs relative to "other similarly situated *nondisabled* individuals" was evidence that actions were taken against them "solely by reason of [their] disability"); *Gipaya v. Barrett*, 803 F. App'x 111, 113 (9th Cir. 2020) (finding that a comparator outside the plaintiff's protected class was not similarly situated "in all material respects" because they did not have "similar jobs" and perform similar duties). The Complaint makes no reference at all to comparator employees for the other alleged adverse actions.

Nor does the Complaint clearly allege other circumstantial evidence of discrimination against Thomas on account of her disability. *See, e.g.*, *Liu*, 664 F. Supp. 3d at 1048-49 (finding triable question of fact as to whether plaintiff was fired because of poor attendance stemming from his disability); *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 435 (9th Cir. 2018) (inferring causation based on the timing of events); *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) (proffering a misleading reason for taking adverse action against an employee supported a finding of intentional discrimination).

The MTD is granted to the extent that Thomas seeks to bring a disparate treatment claim but denied as to Thomas' failure to accommodate claim. Dismissal of the disparate treatment claim is with leave to amend.

### IV.  MOTION FOR JUDGMENT

Thomas has once again moved for judgment on the pleadings. (ECF No. 39

---

from the Complaint. For instance, the Complaint does not state that Thomas was required to make submissions to the Committee that were not required of other clerks. (ECF No. 31 at 23.) Nor does the Complaint allege that Thomas' assignment to pitch parcels "caused, aggravated, and accelerated her chronic medical condition." (*Id.*)

("Motion for Judgment").) Under the Federal Rule of Civil Procedure 12(c), a motion for judgment on the pleadings "may be available after the pleadings are closed." FED. R. CIV. PROC. 12(c). "[P]leadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005); *see also* FED. R. CIV. PROC. 7(a). But Defendants have not yet filed an answer to the Complaint, and their motion under Rule 12(b) stayed their response period until the Court has ruled on the MTD. *See* FED. R. CIV. PROC. 12(a)(4). Thus, the pleadings have not closed, and the Motion for Judgment is premature. *See Doe*, 419 F.3d at 1061-62. The Motion for Judgment is denied without prejudice so that Thomas may re-file it once Defendant has filed an answer.[9] *See id.*

## V. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 37) is granted in part and denied in part, as specified herein. Dismissal of Plaintiff's claims for race discrimination and disability discrimination based on disparate treatment are with leave to amend to the extent Plaintiff can cure the deficiencies identified herein. Plaintiff must

---

[9]The Court notes that a motion for judgment on the pleadings is properly granted "when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)). Multiple issues of material fact remain—including whether the accommodation Thomas requested was reasonable and whether her medical problems substantially limit her major life activities—and thus a motion for judgment would not be appropriate even if it were timely. Moreover, if Defendant denies any of Thomas' allegations in his answer, then those facts will become disputed as well. *Cf. Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) ("A plaintiff may move for judgment on the pleadings if the answer fails to controvert material facts alleged in the complaint . . . Uncontested allegations to which the other party had an opportunity to respond are taken as true.").

file her amended complaint curing the deficiencies identified herein within 30 days of the date of this order—that is, by June 14, 2024. Failure to do so will result in dismissal of these claims with prejudice, and this case will proceed only on the disability discrimination claim based on failure to accommodate. Plaintiff is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself, without reference to any prior pleading. This means that any amended complaint should contain all claims, defendants, and allegations that Plaintiff wishes to pursue in this action.

It is further ordered that Plaintiff's motion for judgment on the pleadings (ECF No. 39) is denied.

DATED THIS 15th Day of May 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE